JOHNSON UNDERTAKING CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7018.    Promulgated November 4, 1927.

PERSONAL SERVICE CLASSIFICATION AS TO ONE BRANCH OF BUSINESS—DENIED.—Petitioner engaged in sale of caskets at wholesale prices and in the general undertaking business, using the same

valuable fixed assets in both departments without any practicable segregation, and which assets, representing invested and borrowed capital, were material income-producing factors. *Held* that the undertaking department was not a distinctly separate branch of the business and that said department was not personal service in character.

*Philip L. Billings, C. P. A.*, and *W. F. Frame, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits taxes in the amount of $2,825.78 as asserted by respondent against petitioner for the fiscal year ended May 31, 1920.

Petitioner alleges that respondent erred in denying petitioner personal service classification of the undertaking branch of its business and in refusing to compute petitioner's tax liability for the said taxable period in accordance with the provisions of section 303 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The petitioner, the Johnson Undertaking Co., Inc., whose name was changed to Harback Undertaking Co., subsequent to the year in question, is an Iowa corporation with its principal place of business at 725 Sixth Ave., Des Moines.

The Johnson Undertaking Co., Inc., was incorporated in the spring of 1919 for the purpose of establishing and maintaining a general jobbing and wholesale business of funeral supplies and also of conducting an undertaking establishment. Shortly after its organization petitioner purchased for cash and notes all the assets of L. Harback & Sons, which had been conducting a wholesale business of funeral supplies and an undertaking establishment. The assets acquired consisted of a two-story-and-basement brick building equipped for mortuary purposes and also with a crematory, which building is still being used by petitioner; three hearses; one Ford sedan; one Dodge sedan; one motor truck, and funeral merchandise and supplies. Petitioner began business on June 1, 1919, on which date its authorized capital stock was $150,000, consisting of 500 shares of common stock of a par value of $100 each and 1,000 shares of preferred stock of a par value of $100 each. Petitioner's outstanding stock was $25,000 par value common stock and $50,000 par value preferred stock on June 1, 1919, and $25,000 par value common stock and $35,000 par value preferred stock on May 31, 1920. On March 31, 1920, $10,000 preferred stock and on May 31, 1920, $5,000

preferred stock was retired by payment therefor in cash. The stock-holders and their respective stockholdings were as follows:

|  | June 1, 1919 | | May 31, 1920 | |
| --- | --- | --- | --- | --- |
|  | Common | Preferred | Common | Preferred |
| W. H. Johnson | 120 | | 120 | |
| H. F. Schoen | 120 | | 120 | |
| W. P. Bair | 5 | | 5 | |
| R. R. Welton | 5 | | 5 | |
| Mrs. Laura Samp | | | | 5 |
| H. F. Schoen and R. R. Welton, partnership | | 500 | | 345 |
| Total | 250 | 500 | 250 | 350 |

W. H. Johnson devoted his entire time to petitioner's business as a whole, that is to the wholesale department and the undertaking department, acted as president of petitioner and conducted funerals, while H. F. Schoen devoted not more than one-half of his time in looking after petitioner's accounts and finances. Schoen was during 1919 and 1920 vice president of the Des Moines Trust Co. and also had other business connections which consumed a good portion of his time. R. R. Welton was not in anywise connected with peti-tioner's business except to attend directors meetings.

Petitioner conducted a business of selling caskets to undertakers throughout the State of Iowa, which it termed its wholesale or jobbing department, and of selling funerals, that is a general under-taking business which petitioner termed its undertaking or retail department. For convenience the business will be described by the so-called departments. The business of the wholesale department consisted of buying caskets from manufacturers at jobbers' dis-counts of from 15 per cent to 50 per cent of the list prices and selling to undertakers at list or wholesale prices; the performing of undertaking services at wholesale prices for out-of-town under-takers and the use of the crematory for other undertakers. The undertaking department sold complete funerals for a lump sum which included use of crematory or use of operating room and fluids, price of casket, use of hearses, cost of services of petitioner's em-ployees, and the personal services of the one who directed the funeral services and looked after all necessary details. The chapel was used if so desired by petitioner's clients and it was quite often rented to other undertakers in which to conduct funeral services. Peti-tioner also hired its hearses to other undertakers. During the year in question petitioner employed seven or eight persons, two of whom, a shipping clerk and a truck driver, worked entirely in the whole-sale department while the others worked in both departments of the business.

Both departments of petitioner's business were conducted in its own building at 725 Sixth Ave. The basement floor was used for the repository, crematory, garage, and heating plant. The first floor was used for the chapel, offices, operating room, dressing room, and for the show room in which caskets were displayed. The second floor was used for the stock and shipping room and there was also a small apartment for the employees' use. Except for the stock room and the motor truck, all of petitioner's building and equipment was used in one or both departments.

From June 1, 1919, petitioner kept one set of accounts with no segregation as to the two departments, until about May, 1920, at which time the accountants auditing the books suggested a segregation of the accounts of the two departments so that petitioner in its income-tax return might claim personal service classification as to its undertaking department and compute its tax under section 303 of the Revenue Act of 1918. During May and June of 1920 the accountants employed by petitioner made up a new set of accounts from the old books and attempted to segregate the various items of assets, liabilities, expenses, income, etc. Where it was clear as to the department under which a particular item should be posted it was so posted in the new set of accounts, and as to other items arbitrary segregations were made based supposedly upon the use made by each department, but in most every instance merely divided fifty-fifty. The record does not show accurately how much use the undertaking department made of the crematory, operating room, dressing room, show room, hearses or chapel.

Petitioner's balance sheets attached to its return show the following:

|  | June 1, 1919 | May 31, 1920 |
|---|---|---|
| ASSETS | | |
| Cash | $50,000.00 | $4,438.97 |
| Notes receivable | | 208.06 |
| Accounts receivable | | 31,628.69 |
| Inventory | 25,000.00 | 41,280.65 |
| Liberty bonds | | 244.00 |
| Land buildings and equipment | 100,000.00 | 101,494.50 |
| Organization expense | 25,000.00 | 25,000.00 |
| Total | 200,000.00 | 204,294.87 |
| LIABILITIES | | |
| Accounts payable | 50,000.00 | 2,554.25 |
| Notes payable | 75,000.00 | 102,500.00 |
| Accrued expenses | | 1,187.73 |
| Reserve for depreciation | | 4,585.12 |
| Capital stock | 75,000.00 | 60,000.00 |
| Surplus | | 33,467.77 |
| Total | 200,000.00 | 204,294.87 |

*Surplus Analysis*

Additions:
    May 31, 1920—Earnings_____ $34, 226. 10
Deductions:
    March 24, 1920—Dividends_____ $408. 33
    May 31, 1920_____ 350. 00
                                                        ————— 758. 33

    Balance_____ 33, 467. 77

The accounts receivable represent moneys due petitioner in both departments but the record does not show the respective amounts due as to each department. The $75,000 notes payable on June 1, 1919, were mostly on the land and building acquired.

Petitioner made its return for the fiscal year ended May 31, 1920, based upon its reconstructed sets of accounts and computed its tax liability under the provisions of section 303 of the Revenue Act of 1918. Respondent determined that the undertaking department was not, during that year, a distinctly separate branch of petitioner's business; that the undertaking department was not entitled to personal service classification, and that petitioner was not entitled to compute its tax liability under said section 303, resulting in the deficiency in tax here in question.

OPINION.

TRUSSELL: Section 303 of the Revenue Act of 1918 provides:

That if part of the net income of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total net income) is derived from a separate trade or business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of " personal service corporations," then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such net income shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part: *Provided*, That the tax upon such second part shall in no case be less than 20 per centum thereof, unless the tax upon the entire net income, if computed without benefit of this section, would constitute less than 20 per centum of such entire net income, in which event the tax shall be determined upon the entire net income, without reference to this section, as other taxes are determined under this title. The total tax computed under this section shall be subject to the limitations provided in section 302.

The record in this proceeding establishes that the undertaking department was not during the fiscal year ending May 31, 1920, a *distinctly separate branch of the business*, but rather that the two departments combined were operated as one business enterprise. The fixed assets were used in both departments in such a manner that a

true segregation was impracticable and upon the evidence the arbitrary segregation is not acceptable.

However, aside from the bookkeeping records of petitioner's business, we are satisfied from the record that the two departments were conducted in close relation to one another and as one business. There were some inter-department transactions such as the sale of caskets by the wholesale department to the undertaking department, but the record is not clear as to just what transpired. The record is clear that funerals were sold by the undertaking department at lump-sum prices, clients were taken to the showroom where they made their selections of caskets, on which no prices were quoted if it could be avoided, and the total price per funeral was fixed according to the expensiveness of the casket and after the net profit was determined it was distributed by some method not shown. The two departments were not *distinctly separate* as required by the above quoted section of the Act.

Petitioner has introduced testimony to the effect that undertaking establishments may be conducted without the use of invested capital and without owning its own building, hearses, etc., by simply renting or hiring such equipment, but this petitioner did actually have and used in its undertaking department valuable fixed assets representing invested and borrowed capital which were material factors in producing its income from both departments. Also, not all of its principal stockholders were actively engaged in petitioner's business as required by section 200 of the Revenue Act of 1918 for personal service classification.

We are thus brought to the conclusion that the undertaking department was not during the year in question a distinctly separate branch of petitioner's business and is not entitled to personal service classification, that petitioner is not entitled to have its income-tax liability computed in accordance with the provisions of section 303 of the Revenue Act of 1918, and respondent must be sustained. See *H. F. Suhr & Co.* v. *Commissioner*, 5 B. T. A. 95.

*Judgment will be entered for the respondent.*

Considered by LITTLETON, SMITH, and LOVE.